**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Richard Griffin,                                    :        Case No. 1:09 CV 1742

     Plaintiff,                                   :

v.                                                  :

Commissioner of Social Security,                    :        **MEMORANDUM DECISION**
                                                             **AND ORDER**

     Defendant.

Plaintiff seeks judicial review of a final decision of the Commissioner denying his

application for Supplemental Social Security Income (SSI) under Title XVI of the Social Security

Act (the Act), 42 U. S. C. §§ 1381 and 405(g).  Pending are Briefs on the Merits filed by the parties

and Plaintiff's Reply (Docket Nos.14, 19 and 20).   For the reasons set forth below, the

Commissioner's decision is affirmed.

## I. PROCEDURAL BACKGROUND

On January 26, 2004, Plaintiff filed an application for SSI alleging that his disability began

on May 16, 2002 (Tr. 61–63).  The application was denied initially and upon reconsideration (Tr.

40-42; 30-32).  Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  A hearing

was conducted by ALJ James Horn on April 29, 2008 (Tr. 567).  Plaintiff, represented by counsel,

appeared and testified.   On May 28, 2008, the ALJ issued an unfavorable decision denying Plaintiff's SSI application (Tr. 12-16).  The Appeals Council affirmed the Commissioner's decision on May 20, 2009 (Tr. 4-6).

## II.  FACTUAL BACKGROUND

Plaintiff was 54 years of age and had a high school education (Tr. 569).  He had been homeless since August 24, 2007 and had no medical insurance (Tr. 570-571, 572).

Plaintiff's major impairments were chronic pulmonary insufficiency, pancreatitis, hypertension, edema, psychiatric impairments including a personality disorder and depression, glaucoma, auditory and visual hallucinations, emphysema ,  history of alcohol abuse and seizures (Tr. 570, 576, 577, 580).  Counsel stipulated that the alcohol use was not a material factor but that Plaintiff used it to self-medicate (Tr. 571).

Two days prior to the hearing, Plaintiff had been released from the hospital.   While hospitalized, Plaintiff underwent a breathing treatment on a ventilator (Tr. 574).  Common allergens that affected Plaintiff's ability to breathe included dust, detergent, bleach and ammonia.  Cold weather did not affect his breathing (Tr. 575).

Plaintiff had the visual problems of cataract and glaucoma.  Eye drops were administered to treat his blurred vision which dissipated when he wore glasses (Tr. 578).

Plaintiff started drinking as an adolescent (Tr. 573).  He had maintained sobriety from November 2002 to August 2007 (Tr. 572).  Excessive drinking caused him to have seizures; consequently, an anti-seizure medication was prescribed (Tr. 580).

In 1971, Plaintiff was shot in the right wrist (Tr. 578).  He could hardly use or bend his hand (Tr. 579).

2

Plaintiff was prescribed a medication used to treat symptoms of schizophrenia and hallucinations (Tr. 580).  Plaintiff reported having conversations with his deceased relatives and he heard voices that advised him against jumpomg off a bridge on April 1, 2008 (Tr. 582).

Plaintiff was prescribed medications to stabilize his blood pressure and cholesterol levels (Tr. 583).

Plaintiff had limited past relevant work experience (Tr. 569).  Now, he panhandled to afford beer (Tr. 573).

### III. MEDICAL EVIDENCE

On April 22, 2002, Plaintiff was diagnosed with acute pancreatitis (Tr. 127).  There was no evidence of cardiopulmonary disease (Tr. 136).

On June 30, 2004, Plaintiff underwent a psychological evaluation.  His speech was productive and fluent, he was oriented on three spheres, he could name the past few presidents and he could name five large cities (Tr. 162).  Dr. George Starett, a licensed psychologist, diagnosed Plaintiff with an antisocial personality disorder, emphysema and some impairment in reality testing or communication or major impairment in several areas such as work or school, family relations, judgment, thinking, or mood (Tr. 163).

Dr. Matthew Rushlau conducted a psychiatric review technique in which he found that Plaintiff had a personality disorder.  Plaintiff had mild difficulties in social functioning (Tr. 175). Plaintiff was treated on January 16, 2005 at the University Hospital of Cleveland for chest pain and dizziness.  There was no evidence of a pulmonary embolism (Tr. 188).  The results from the magnetic resonance imaging (MRI) of the brain were unremarkable and examination of the brain was unremarkable (Tr. 186).

Plaintiff was treated at Care Alliance, a leading provider of primary health care services for persons who are experiencing homelessness.  Www.carealliance.org.  In April 2005, he was provided samples of medication designed to treat coronary artery disease and high cholesterol (Tr. 214).

Plaintiff was diagnosed with a lazy left eye on April 11, 2005.  Plaintiff's visual field appeared to be disturbed (Tr. 205).

At Care Alliance, in July 2005, the treating source determined that Plaintiff had not taken his blood pressure or cholesterol medications for three weeks.  Plaintiff's asthma, however, was stable (Tr. 536).  On September 28, 2005, Plaintiff was examined and diagnosed with situational depression, atopic dermatitis and chronic obstructive pulmonary disease (COPD) (Tr. 539).  In addition to his other health conditions, Plaintiff complained of and was treated for intense headaches on October 19, 2005 (Tr. 540).

 Plaintiff was treated for right leg pain and swelling on April 20, 2006 (Tr. 544).  On May 5, 2006, it was acknowledged that Plaintiff needed glaucoma treatment (Tr. 545).  On July 31, 2006, Plaintiff's feet were swelling (Tr. 547).  In October 2006, Plaintiff experienced numbness in his fingers (Tr. 548).  Although he suspected that he was "going blind in one eye," Plaintiff's glaucoma was well controlled in June 2007 (Tr. 556).  Plaintiff admitted on December 28, 2007, that he had relapsed and contemplated suicide (Tr. 560).

In August 2004, Plaintiff underwent an evaluation at the Community Assessment and Treatment Services (CATS), a treatment facility providing abstinent-based intervention. Www.communityassessment.org. Plaintiff's plan included a self-evaluation of his problems and progress.  He had difficulty with housing and employment.  During the course of treatment,

4

Plaintiff worked on his relationship with his stepson and obtained part-time employment. Plaintiff successfully completed treatment and was discharged from the program on February 16, 2005 (Tr. 513-533). In the meantime, Plaintiff's asthma was considered controlled on October 21, 2004 (Tr. 222).

Dr. Franklin D. Krause, M.D., diagnosed Plaintiff with COPD of uncertain severity, hypertension, chest pain and glaucoma on October 6, 2005. He opined that Plaintiff could raise his shoulders, elbows, wrists, fingers, hips, knees, feet and great toes against resistance. He found that Plaintiff's grasp, manipulation, pinch and fine coordination were normal (Tr. 238). The range of motion in Plaintiff's cervical spine, shoulders, elbows, wrists, hand and fingers, dorsolumbar spine, hips, knees and ankles was also within normal limits (Tr. 239).

Plaintiff had several encounters with the MetroHealth Medical Center (MetroHealth). On August 18, 2007, Plaintiff was diagnosed with unspecified chest pain, elevated potassium levels, essential hypertension and syncope (Tr. 452). On August 19, 2007, there was no evidence of acute cardiopulmonary disease (Tr. 461). The computed thoracic and lumbar spine images showed no acute fracture or dislocation (Tr. 422). On August 27, 2007, computed tomographic (CT) scams were taken of Plaintiff's thoracic and lumbar regions. There was no acute fracture or dislocation in the thoracolumbar region (Tr. 505). There were, however, emphysematous changes in the right upper lobe (Tr. 498). Plaintiff was admitted on August 30, 2007 to treat seizures (Tr. 400).

Plaintiff was admitted to MetroHealth again on September 27, 2007 after having a syncopal episode (Tr. 381). Too intoxicated to cooperate with the physical examination, Plaintiff was placed on alcohol withdrawal precautions and he resumed taking his anti-seizure medication

5

(Tr. 381).  On November 6, 2007, Plaintiff was found seizing in the parking lot.  There was no acute intracranial abnormality noted (Tr. 483).  He was also treated for rectal bleeding (Tr. 365).  Plaintiff was treated for seizures on November 9, 2007 (Tr. 340).  On November 10, 2007, Plaintiff was found lying on the sidewalk.  He was suicidal and smelled of ethyl alcohol (Tr. 481).  Plaintiff was treated for closed head injury and alcohol intoxication on November 12, 2007 (Tr. 328).  Plaintiff was intoxicated on December 1, 2007 and explained that he wanted to jump off a bridge (Tr. 477).  Physically, it was determined that Plaintiff's ventricles were enlarged (Tr. 472).

On April 1, 2008, while in the waiting room at MetroHealth, Plaintiff suffered a syncopal event.  Plaintiff smelled of alcohol and had slurred speech.  He was prescribed anti-seizure medication (Tr. 271, 272).  On April 6, 2008, Plaintiff was treated for clinical intoxication (Tr. 255).

## IV.  STANDARD OF REVIEW

This Court exercises jurisdiction over review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383 (c)(3).  *McClanahan v. Commissioner of Social Security*, 474 F.3d 830, 832-33 (6th Cir. 2006).  Judicial review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied.  *Elam ex rel. Golay v. Commissioner of Social Security*, 348 F.3d 124, 125 (6th Cir. 2003) (*see Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Under 42 U.S.C. § 405(g), the ALJ's findings are conclusive so long as they are supported by substantial evidence.  *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  The court's

6

review is limited to determining whether there is substantial evidence in the record to support the findings.  *Id.* (*citing Duncan v. Secretary of Health & Human Services*, 801 F.2d 847, 851 (6th Cir.1986)).  Substantial evidence means 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (*citing Kirk v. Secretary of Health & Human Services*, 667 F.2d 524, 535 (6th Cir.1981) *cert. denied,* 103 S. Ct. 428 (1983) (*quoting Richardson v. Perales*, 91 S. Ct. 1420, 1426 (1971)).  Furthermore, the court must defer to an agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Id.* (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  The court's role is not to resolve conflicting evidence in the record or to examine the credibility of the claimant's testimony.  *Id.* at 614-615 (*citing Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987)).

## V. STANDARD FOR ESTABLISHING DISABILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act.  42 U.S.C. § 1382(a) (Thomson Reuters 2010); 20 C.F.R. § 416.202 (Thomson Reuters 2010).  Eligibility is dependent upon disability, income, and other financial resources.  20 C.F.R. § 416.202 (Thomson Reuters 2010).

To establish disability, a plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months.  A plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy.  20 C.F.R. § 416.905 (Thomson Reuters 2010).  (*citing* 42 U.S.C. §§ 423(d)(1)(A),

1382(c)(a)(3)(A)).

A five-step sequential evaluation is employed to determine whether a claimant is disabled. *Id.* If a claimant can be found disabled or not disabled at any step of the sequential evaluation, the review ends. *Underwood v. Commissioner of Social Security*, 2010 WL 424970, *4 (N. D. Ohio 2010) (*citing* 20 C.F.R. § 404.1520(a)).

At Step One, the ALJ considers the claimant's work activity. A claimant is not disabled if engaged in substantial gainful activity, *i.e.,* working for profit. *Id.*

At Step Two, the ALJ considers the medical severity of the claimant's impairments. A claimant is not disabled if he or she does not have a severe medically determinable physical or mental impairment that also meets the duration requirement in 20 C.F.R. § 404.1509, or a combination of impairments that are severe and meets the duration requirement. *Id.*

At Step Three, the ALJ determines whether the claimant has an impairment that meets or equals one of the criteria of an impairment listed in Appendix 1 and meets the duration requirement. *Id.* (*see* 20 C.F.R. § Part 404, Subpart P, Appendix 1). A claimant is disabled if he or she has an impairment that meets the listing and the duration requirement. *Id.* Before considering the fourth step, the ALJ must determine the claimant's residual functional capacity or the claimant's ability to perform physical and mental work on a sustained basis despite limitations from impairments. *Id.*

At Step Four, the ALJ considers whether the claimant's RFC permits him/her to perform past relevant work. *Id.*

At the final step, Step Five, the ALJ considers the claimant's RFC and his or her age, education, and work experience to determine whether the claimant may work. *Id.* Even if the

8

claimant's impairment does prevent him/her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, then the claimant is not disabled. *Id.* (*citing Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *see also Barnhart v. Thomas*, 124 S. Ct. 376, 379 (2003) (describing five-step evaluation)).

The claimant bears the burden of proof at steps one through four. *Id.* (*citing Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir. 2004)). At Step Five, the burden shifts to the Commissioner to identify "a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* (*citing Jones v. Commissioner of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003)). The claimant bears the ultimate burden of proof on the issue of disability. *Id.* at *4-5 (*see* 20 C. F. R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"); *Richardson v. Heckler*, 750 F. 2d 506, 509 (6th Cir. 1984) ("A social security disability claimant bears the burden of proof on the issue of disability."). The burden of proof regarding the establishment of disability onset date lies with the claimant. *Id.* (*citing McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 836 (6th Cir. 2006)). Moreover, the claimant has the burden of providing detailed medical evidence allowing the ALJ to make an informed decision. *Id.* (*see Landsaw v. Secretary of Health & Human Services*, 803 F.2d 211, 214 (6th Cir. 1986)). Lastly, the claimant must not only produce a diagnosis of an impairment, but also demonstrate correlative functional limitations. *Id.* (*citing* 20 C.F.R. § 404.1512(c)).

## VI. ALJ DETERMINATIONS

The ALJ made the following findings:

1.      Plaintiff filed an application for SSI on January 26, 2004.

9

2.      Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability on May 16. 2002.

3.      The medical evidence established that Plaintiff had severe impairments that met Section 12.09 and 12.08 of the Listings.

4.      These medically determinable impairments were not disabling in the absence of substance abuse.

5.      Because Plaintiff would not be disabled if he stopped the substance use, the claimant's substance use disorder was a contributing factor material to the determination of disability.

(Tr. 12-16).

## VII. DISCUSSION

First, Plaintiff contends that the ALJ committed legal error when he failed to find that Plaintiff had other severe impairments independent of the alcoholism at Step two of the sequential evaluation.  Second, Plaintiff states that the ALJ committed legal error when he failed to comply with the legal requirements of 20 C. F. R. § 404.935 in evaluating whether alcoholism was a contributing factor material to the determination of disability.

Defendant argues that the ALJ correctly found that Plaintiff's alcoholism is a material and contributing factor to his disability and that Plaintiff does not have any other disabling or limiting impairments.  Plaintiff has not shown any reversible error on the part of the ALJ.

## 1.      PLAINTIFF'S OTHER IMPAIRMENTS.

Plaintiff contends that this case should be remanded to the Commissioner so that the ALJ can consider other severe impairments including depression, glaucoma, COPD, emphysema, antisocial personality disorder, pancreatitis, chronic liver disease and arthritis of the back and knees independent of his alcoholism at Step two of the sequential evaluation.

10

At Step two, the Commissioner considers whether a claimant has an impairment or combination of impairments that are severe and that meets the duration requirement. *Norman v. Astrue,* 694 F. Supp.2d 738, 750 (N. D. Ohio 2010) (*citing* 20 C.F.R. §§ 404.1520(a)(4)(ii)). The Social Security Association (SSA) has determined that a "severe impairment" is an impairment or combination of impairments that "significantly limit a claimant's physical or mental ability to do basic work activities." *Id.* (*citing* 20 C.F.R. §§ 404.1520(c), 416.920(c)). In the Sixth Circuit, if the medical evidence alone indicates that a claimant's impairments impact his or her ability to perform basic work activities in even a *de minimis* way, a determination that the impairments are not severe would be unsupported by substantial evidence. *Id.* at 750-751 (*see Halcomb v. Bowen*, No. 86-5493, 1987 WL 36064, at *3 (6th Cir. 1987); *Farris v. Secretary of Health & Human Services*, 773 F.2d 85, 89-90 (6th Cir. 1985); *Salmi v. Secretary of Health & Human Services,* 774 F.2d 685, 691-92 (6th Cir. 1985)). Nonetheless, if the ALJ finds at least one impairment to be "severe," he or she must move on to the subsequent steps in the evaluation. *Id.* The ALJ is not required to continue to analyze the remainder of the claimant's impairments to determine whether they too are severe. *Id.* Furthermore, the Sixth Circuit has determined that the failure to further analyze the character of the other impairments while in step two is not a reversible error so long as the ALJ has already determined that at least one of the claimant's impairments is severe. *Id.* (*citing Maziarz v. Secretary of Health & Human Services,* 837 F.2d 240, 244 (6th Cir. 1987); *see also Anthony v. Astrue,* 266 Fed. Appx. 451 (6th Cir. 2008)).

Once Plaintiff succeeded in convincing the ALJ that he had an impairment of the severity to meet the criteria in 12.09 of the Listing, the ALJ was required to continue his sequential analysis by considering Plaintiff's RFC. The ALJ found one impairment to be "severe," so he

11

moved on to the subsequent steps in the evaluation.  The terms of the decision strongly indicate that the ALJ complied with the procedural mandates in assessing Step 2 of the sequential evaluation.

The ALJ did consider Plaintiff's other medically determinable impairments including, depression (Tr. 14-15), glaucoma, COPD,  pancreatitis and chronic liver disease (Tr. 13), emphysema (Tr. 14).  The ALJ was not required to consider the arthritis in the back and knees as there is no evidence that these impairments lasted for a continuous period of not less than twelve months.  Plaintiff's glaucoma was well controlled in June 2007 (Tr. 556).  Plaintiff's asthma was considered controlled on October 21, 2004 (Tr. 222).  Plaintiff presented several times at the emergency room with seizures and syncope during or after a drinking episode.  There was no correlation between the medical evidence and the allegations of severe pancreatitis or severe liver disease.  There were instances when Plaintiff had swollen feet but no objective medical evidence of its severity.  Occasionally, Plaintiff had difficulty breathing.  The complaints of breathing difficulties and hand/wrist pain were episodic.  Medication was prescribed to control the symptoms at that moment.  The rational for discounting many of these impairments is that there is no objective medical evidence of their existence or that the symptoms lasted long enough to be considered severe.

The only medically determinable impairment in this case that rises to the level of severity to be disabling is Plaintiff's alcoholism.  The ALJ did not err in failing to consider Plaintiff's unsubstantiated claims either singly or in combination with each other at Step two of the sequential evaluation.

12

2.     REQUIREMENTS WHEN ALCOHOLISM IS AN ISSUE.

Plaintiff states that the ALJ failed to comply with the legal requirements of 20 C. F. R. § 404.935 [sic] in evaluating whether alcoholism was a contributing factor material to the determination of disability.

In THE CONTRACT WITH AMERICA ACT of 1996 ("Welfare Reform Act"), Pub. L. No. 104-121, 110 Stat. 852, 853 (*eff. Mar. 29, 1996),* Congress amended the ACT to prohibit the award of benefits to individuals for whom alcoholism or drug addiction is a contributing factor material to their disability determination. *Underwood, supra*, 2010 WL 424970, at *5 (*see* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3) (J)). The House Report on the Act specifically states that this law was enacted to eliminate payment of cash Social Security and SSI disability benefits to drug addicts and alcoholics, to ensure that beneficiaries with other severe disabilities who are also drug addicts or alcoholics are paid benefits through a representative payee and referred for treatment and to provide additional funding to states to enable recipients to continue to be referred to treatment sources. *Id*.

Section 20 C. F. R. § 404.1535 governs whether a claimant's drug or alcohol use is a contributing factor material to the determination of disability. *Id*. The primary factor driving a drug abuse and alcoholism disability determination is whether the individual would be disabled if he or she stopped using drugs or alcohol. *Id*. In order to determine whether a claimant's alcohol or drug use precludes them from receiving Social Security benefits the ALJ must first determine whether a claimant is disabled and then determine whether alcohol or drug use is a material contributor to the determination of disability or whether severe enough limitations would remain in the absence of alcoholism or drug addiction. *Id*. (*citing* 20 C.F.R. § 404.1535(a)).

13

Section 404. 1535 states:

How we will determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(a)    General.  If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(b)    Process we will follow when we have medical evidence of your drug addiction or alcoholism.

(1)    The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

(2)    In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

*Id.* at *5 fn. 4.

Claimant bears the burden of proving that alcoholism or drug addiction is not a contributing factor material to the claimed disability.  *Id.* at *6 (*see Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007); *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002); *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999)).  The ALJ, however, retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding.  *Id.* (*citing Hildebrand v. Barnhart,* 302 F.3d 836, 838 (8th Cir. 2002)).  "If the ALJ is unable to determine whether substance use disorders are a contributing factor material to the claimant's otherwise-acknowledged disability, the claimant's burden has been met and an award of benefits must follow."  *Id.* (*See Fastner v. Barnhart*, 324 F.3d 981, 86 (8th Cir. 2003); *see also Brueggeman v. Barnhart*, 348 F.3d 689, 693 (8th Cir. 2003)).

14

The ALJ must reach the determination regarding the claimant's disability initially using the standard five-step approach described in 20 C.F.R. § 404.1520 without segregating any effects that might be due to substance use disorders. *Id.* (*citing Ball v. Massanari*, 254 F.3d 817, 821 (9th Cir. 2001); *Doughty v. Apfel*, 245 F.3d 1274 (11th Cir.2001)).  Upon a finding that a claimant has severe impairments, the Regulations dictate that the ALJ next determine whether the claimant would still be disabled without the substance abuse. *Id.*  20 C.F.R. § 404.1535 indicates that in making this determination, the ALJ should "evaluate which of [the] current physical and mental limitations, upon which [s/he] based [the] current disability determination, would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's] remaining limitations would be disabling." If a claimant has drug abuse and alcoholism-related physical or psychological impairment(s), or a combination thereof, that are disabling even when drug or alcohol abuse has stopped, the claimant is disabled. *Id.*  Stated differently, if the limitations remaining after the drug and alcohol use has stopped are not disabling, the substance abuse is a contributing factor material to the disability. *Id.*

Clearly, Plaintiff has not met the burden of proving that his alcoholism is not a contributing factor material to his disability determination.  There is substantial medical evidence which shows that Plaintiff's impairments are connected to his alcoholism and that in the absence of his alcoholism, his impairments are not disabling.  Plaintiff's glaucoma was well controlled in June 2007 (Tr. 556).  Plaintiff's asthma was considered controlled on October 21, 2004 (Tr. 222).  When he took his medicine as prescribed, his hypertension and hypercholesterol were controlled.  There is no longitudinal study of his alleged impairments, depression, COPD, emphysema, pancreatitis, chronic liver disease and arthritis, or their treatment.  Most of these

15

diagnoses are postulated on Plaintiff's lack of sobriety and/or his consumption of alcohol.  The evidence does not show that any of Plaintiff's impairments lasted through the durational period of time or that they were as severe as alleged.  Considering the record as a whole, Plaintiff has not met his burden of proving that alcoholism is not a contributing factor material to his disability determination.  Accordingly, the ALJ correctly determined that Plaintiff was not disabled within the meaning of the Act at any time from the date of application through the date of his decision.

### VIII.  Conclusion.

For the foregoing reasons, the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date:   September 17, 2010

16